IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
OCT 24 2014
CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  CRIMINAL ACTION NO. 2:12cr124

ANTHONY CHARLES HUNTER,

    Defendant.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant Anthony Charles Hunter's Motion to Suppress Defendant's statements to law enforcement agents and all physical evidence obtained in violation of the Fifth and Sixth Amendments to the Constitution of the United States of America. Specifically, Defendant contends that the police conducted three separate custodial interrogations without first obtaining proper waivers of his rights under *Miranda v. Arizona*, and that he was questioned outside the presence of his appointed counsel after charges had been filed, in violation of the Sixth Amendment. Having reviewed the pleadings and held a hearing on the Motion to Suppress, this matter is now ripe for judicial determination. For the reasons stated below, Defendant's Motion to Suppress is **GRANTED** in part and **DENIED** in part. Specifically, the Motion to suppress statements and evidence related to police questioning on October 18, 2007, and October 20, 2007 is **DENIED**. Defendant's Motion to Suppress statements and evidence related to police questioning on October 22, 2007, is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

The instant Motion to Suppress stems from police interrogations of Mr. Hunter on October 18, 2007, October 20, 2007, and October 22, 2007. Norfolk Police arrested Defendant

1

on state robbery warrants on the 300 block of Davis Street in Norfolk, Virginia, at approximately 10:00 p.m. on October 18, 2007.

Prior to questioning on October 18, 2007, Detective D. Jarvis of the Norfolk Police Department presented Defendant with a Legal Rights Advice Form. Gov. Ex. A. Defendant proceeded to read aloud the first question, which asked "Do you understand that you have the right to remain silent?" Defendant answered "yes" on the form. Detective Jarvis then proceeded to read aloud each of the remaining six questions. Defendant responded affirmatively to each of the six questions on the form and initialed next to each. Defendant further answered affirmatively that he "sign[ed] this paper with complete understanding of [his rights]," and that "I further state that I waive these rights and desire to make a statement." Finally, Defendant acknowledged that "This statement is completely free and voluntary on my part without any threat or promise from anyone." Defendant was subsequently interviewed by detectives from the Norfolk and Virginia Beach Police Departments until approximately 2:40 a.m. on October 19, 2007. According to the Government, Defendant was asked several times whether he needed anything, was provided cigarettes and bottled water at his request, and was permitted to take a nap. After questioning, Defendant was transported to Norfolk City Jail.

On October 20, 2007, Defendant was transported to the Norfolk Police Department Police Operations Center for the purpose of obtaining a buccal swab. Defendant signed a consent form for the procedure. During the procedure, Defendant admitted that he had committed numerous commercial robberies between Richmond, Virginia and Charlotte, North Carolina. Norfolk Police provided Defendant with cigarettes and a bottle of Coca-Cola during questioning. After questioning, Defendant was returned to Norfolk City Jail.

Defendant was questioned for a third time on October 22, 2007. At approximately 6:30 p.m., Defendant was transported back to the Police Operations Center of the Norfolk Police Department for questioning by Chesapeake and Virginia Beach detectives. By that time, Defendant had been appointed counsel for his state court charges relating to robberies in Norfolk. Defendant appeared in state court on October 22, 2007. Later that day, Defendant was questioned by Detective J.G. Thomas of the Chesapeake Police Department (CPD) who advised Defendant of his *Miranda* rights by reading aloud a CPD *Miranda* Warning form. Gov. Ex. D. The form clearly advised Defendant of the nature of his *Miranda* rights and the consequences of abandoning them. After Defendant answered "um hum" to each of the *Miranda* Warning form questions, Officer Thomas began questioning about the alleged Chesapeake robberies. The *Miranda* Warning Form contains a "waiver" section, which was neither filled out nor signed. Shortly after questioning began, Defendant said "uh, I went to court today," to which Officer Thomas replied, "you went to court today?" Defendant then replied, "and um, I got a paper today um, for a lawyer. Talk to him about it." Defendant then signed his name at the bottom of the *Miranda* Warning form, leaving the waiver section completely blank.

On September 20, 2012, a Federal Grand Jury returned a fourteen-count Superseding Indictment charging Defendant with Interference with Commerce by Robbery and Conspiracy to Interfere with Commerce by Robbery (Counts 1, 3, 5, 6, 7, 8, 10, 11, 13, 14) in violation of 18 U.S.C. § 1951, and Use, Carry and Brandish a Firearm During and in Relation to a Crime of Violence (Counts 2, 4, 9, 12) in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Each of the ten alleged robberies took place between September 29, 2007 and October 18, 2007, in Virginia Beach, Chesapeake, Norfolk, and Suffolk, Virginia. The Indictment also included an allegation of criminal forfeiture, 21 U.S.C. § 853(p). This Court issued a Memorandum Opinion and Order

denying Defendant's Motion to Dismiss on October 31, 2013. A Memorandum Opinion and Order denying Defendant's Supplemental Motion to Dismiss was issued on June 9, 2014. The Court heard argument on the instant motion on September 10, 2014.

Defendant now moves pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments of the United States Constitution to suppress "any and all statements and evidence seized in connection with the unlawful questioning of Mr. Hunter" on October 18, 2007, October 20, 2007, and October 22, 2007.[1] Defendant's Motion, along with a Memorandum of Law, was filed on June 19, 2013. The Government filed a response on July 19, 2013.[2] Defendant filed a Reply on July 26, 2013. In addition to his *Miranda* and Sixth Amendment arguments, Defendant argues that he was "not mentally competent" at the time of his questioning, and as a result, his statements and alleged waivers of his rights were not voluntary.

## II. LEGAL STANDARDS

### A. Motion to Suppress

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005). During the hearing, "the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir. 1993) (quoting *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991)). *See also*

---

[1] The Motion to Suppress as filed only challenged Defendant's October 22, 2007 questioning and only raised Fifth Amendment claims. At the hearing, however, Defendant's counsel orally amended the Motion by asserting challenges to and making arguments about each of the three police questionings. Defense counsel also added challenges based on the Sixth Amendment. The Court finds that the interests of justice require thorough consideration of all of Defendant's challenges.

[2] The Government's Response was combined with its Response to the Defendant's Motion to Dismiss.

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) ("[I]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.") (quoting *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993)). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."). Where a defendant seeks to suppress a statement under *Miranda v. Arizona*, 384 U.S. 436 (1966), the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Matlock*, 415 U.S. at 178.

## B. *Miranda* Rights and Waiver

When law enforcement interrogates a suspect while in custody, *Miranda* warnings are required. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id.* If law enforcement does not administer *Miranda* warnings before they question a person in custody, evidence resulting from the questioning must be suppressed. However, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

To determine whether a suspect has made a voluntary, knowing, and intelligent waiver, courts must engage in two inquiries. First, a court must find that "the relinquishment of the right 'must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, a court must find that the "'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 140. If a court finds that under the totality of the circumstances there was "both an uncoerced choice and the requisite level of comprehension," a defendant's waiver of *Miranda* rights will be considered voluntary, knowing and intelligent. *Id.* When analyzing the totality of the circumstances, courts have considered such factors as the suspect's "intelligence and education," his "age and familiarity with the criminal justice system," and "the proximity of the waiver to the giving of the *Miranda* warnings." *Poyner v. Murray*, 964 F.2d 1404, 1413 (4th Cir. 1992); *see, e.g., United States v. Robinson*, 404 F.3d 850, 860-61 (4th Cir. 2005) (upholding waiver of rights by sixteen year old defendant with I.Q. of 70 where defendant was street wise, expressed no inability to understand rights as they were read, and waived them when questioned for a third time after being conversant with rights based on two prior readings). A waiver is involuntary "when induced by such duress or coercion, express or implied, that the accused's 'will has been overborne and his

6

capacity for self-determination critically impaired.'" *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).

A defendant's Fifth Amendment right to an attorney, which he or she must be advised of before custodial interrogation pursuant to *Miranda*, is neither offense specific nor triggered solely with respect to charged conduct. *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). To invoke a right to speak to an attorney, a defendant must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "If an accused makes a statement concerning the right to counsel that is 'ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 2259-60 (2010) (internal citations omitted). *See also Davis*, 512 U.S. at 459 (noting that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."). *But see McNeil*, 501 U.S. at 177 (holding that if a defendant clearly and unequivocally invokes this right, "he may not be reapproached regarding any offense unless counsel is present."). However, if a suspect continues to be interrogated after an unequivocal request to speak with an attorney, his statements are presumed involuntary and are therefore inadmissible at trial, even where the suspect executes a waiver that would render his statements voluntary under traditional standards. *Michigan v. Harvey*, 494 U.S. 344, 350 (1990); *see also Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) ("[I]f the suspect states that he wants an attorney, the interrogation must cease until an attorney is present."). Where the police

have obtained a lawful *Miranda* waiver, however, questioning may continue unless and until the subject of the interrogation invokes his *Miranda* rights. *See Davis v. United States*, 512 U.S. 452, 461, 114 S. Ct. 2350, 2356 (1994) ("We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.").

## C. Sixth Amendment Right to Counsel

The Sixth Amendment to the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to counsel is offense specific and attaches "after the initiation of adversary judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb*, 532 U.S. 162, 167-8, 121 S. Ct. 1335 (2001) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 111 S. Ct. 2204 (1991)). In *Michigan v. Jackson*, the United States Supreme Court held that "if a defendant's Sixth Amendment right to counsel has attached and the defendant has invoked that right, law enforcement officers may not interrogate him unless the defendant initiates the exchange with the officers and waives his right to counsel." 475 U.S. 625, 636, 106 S. Ct. 1404 (1986). *See also United States v. Cain*, 524 F.3d 477, 482 (4th Cir. 2008).

## D. Police Coercion and Capacity to Waive *Miranda*

Statements are only the result of police coercion "when induced by such duress or coercion, express or implied, that the accused's 'will has been overborne and his capacity for self-determination critically impaired.'" *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).

Even where a defendant has a well-documented history of mental illness, a deficient mental condition is not, "without more, enough to render a waiver involuntary." *Cristobal*, 293 F.3d 134 at 141 (citing *Colorado v. Connelly*, 107 S.Ct. 515 (1986)). Indeed, "while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.*

### III. DISCUSSION

This Court will consider several questions. Initially, the Court will examine whether the Defendant had the capacity to make a knowing, voluntary, and intelligent waiver of his rights to counsel. Next, the Court will determine if the Defendant invoked or waived his right to counsel prior to making inculpatory statements on October 18, 2007, October 20, 2007, or October 22, 2007. Finally, the Court will determine whether any of the statements or information obtained as a result of police questioning must be suppressed.

### A. Defendant's Capacity to Waive his Right to Counsel

Any waiver of a suspect's rights under *Miranda* must be knowing, voluntary, and intelligent. Defendant contends that he was incapable of voluntarily and intelligently waiving his Fifth and Sixth Amendment rights in October of 2007 because he suffers from serious mental deficiencies and defects. ECF No. 32 at 4. On a motion to suppress, the Government bears the burden of proving, by a preponderance of the evidence, that the defendant's waiver of his Miranda rights was knowing and voluntary. *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005). The defendant in *Robinson* claimed that he lacked the capacity to waive his *Miranda* rights because of his "admittedly low I.Q. and several mental disorders." *Id.* at 861. The *Robinson* defendant contended that his limited intellectual ability precluded the Government from proving that he knowingly waived his Miranda rights. *Id.* The Fourth Circuit disagreed.

9

In affirming the district court's denial of Robinson's motion to suppress, the Court placed particular importance on the circumstances surrounding the defendant's waiver. *See Id.* ("nothing in the record indicates that Robinson could not understand the rights as Agent Hicks provided them."). In cases involving defendants with lower intellectual ability, "the knowingness of the waiver often turns on whether the defendant expressed an inability to understand the rights as they were recited." *Id. See also Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir. 1995) (finding waiver knowing, voluntary and intelligent where a defendant's I.Q. was lower than average and the defendant had previous experience with law enforcement); *Boone v. Polk*, 441 Fed.Appx. 193, 197 (4th Cir. 2011) (unpublished *per curiam* opinion) (finding knowing and intelligent waiver where the defendant was mentally retarted under North Carolina law and presented a doctor's affidavit testifying to his limited intellectual and reading abilities); *United States v. Rosaria-Diaz*, 202 F.3d 54 (1st Cir. 2000) (affirming the denial of a motion to suppress where the defendant's I.Q. was lower than average because it appeared to the police that the defendant understood the officers' questions and her rights); *United States v. Male Juvenile*, 121 F.3d 34, 40 (2d Cir. 1997) (finding a knowing waiver where a juvenile with attentional and learning disabilities indicated that he understood his rights as they were read to him).

The Court notes that Defendant was found incompetent to stand trial on similar charges in 2009. This Court has since concluded that Defendant *is* competent to stand trial. ECF No. 27. To support his contention that his mental state rendered him incapable of voluntarily and intelligently waiving his rights in October of 2007, Defendant offered into evidence eight psychological reports and evaluations (Defense Exhibits 1-8). The Court has reviewed Defendant's Exhibits 1-8 and is well aware of their contents from the previous two Motions to

Dismiss filed in this case. But the Court must also note that in February of 2013, a forensic mental health evaluation report concluded that Defendant was malingering. ECF No. 26. The problem for the Court is that none of the reports in evidence were compiled at or near the time of the incidents in question. Indeed the earliest report, Defense Exhibit 1, was based on an evaluation of Defendant conducted on April 11, 2008, nearly six months after the police questioned Defendant. The Court has previously ordered Defendant to submit to an examination to determine his mental state at the time of the offense (ECF No. 33); however, Defendant has not submitted to an examination.

The only evidence before the Court regarding Defendant's mental state at the time of his arrest and questioning on October 18, 2007, came in the form of live testimony at the motion hearing. Sargent Jarvis, then a lead investigator and detective with the Norfolk Police Department, testified about Defendant's demeanor during his arrest. Detective Jarvis testified that Defendant listened to police commands, put his hands up when instructed, and seemed coherent throughout. *See* Hearing Transcript at 9. Detective Jarvis further testified that he found no intoxicants in Defendant's possession and made no observations of Defendant being under the influence of drugs or alcohol. *Id.* Further, Detective Jarvis noted that Defendant was able to read to the detective the first question on the Norfolk Police Department Legal Rights Advice Form, Gov. Ex. A, and that Defendant exhibited no trouble completing the form and signing his name below the *Miranda* waiver section. *Id.* at 13. The Court also heard from Officer John Hines and Detective J. Cericola of the Norfolk Police Department, who both testified about Defendant's ability to understand and respond to police questioning. Finally, the Court heard testimony from Detective J. Thomas, a Detective with the Chesapeake Police Department. Detective Thomas testified that he met with Defendant twice, first on October 18-19 and second

on October 22, 2007. Detective Thomas testified that he presented Defendant with a *Miranda* Warning form, Gov. Ex. D, and read each of Defendant's *Miranda* rights aloud. According to the transcript of Detective Thomas's interview, Gov. Ex. E, he repeatedly asked Defendant if Defendant understood his rights. Defendant responded in the affirmative each time. Detective Thomas further testified that Defendant seemed coherent and made sense as he answered questions.

In determining whether Defendant was able to knowingly, voluntarily, and intelligently waive his *Miranda* rights, the Court considers the totality of the circumstances. Defendant's cognitive impairment must not be understated—there is no question that he functions with a lower than average cognitive ability. However, the record supports that Defendant was capable of making a knowing, voluntary, and intelligent waiver of his rights in 2007. Defendant intelligently responded to police efforts to obtain confessions, and even challenged the quality of the evidence against him. *See* Tr. at 23 ("That's why you have him here, because he said I did it...is that all you have, is him?") He stated that he understood the nature of his rights and the consequences of waiver. Tr. at 13-16. Several police officers who interacted with Defendant at and near the time of his arrest testified that he was coherent and responsive. Tr. at 9, 28, 63. And, much like the defendants in *Robinson* and *Correll*, Defendant here has significant prior experience with law enforcement, having been arrested at least 10 times between 1978 and October of 2007. Therefore, the Court is satisfied that Defendant had the capacity to make a knowing, intelligent, and voluntary waiver of his *Miranda* rights in October of 2007.

### B. Suppression of October 18, 2007 Statements

Defendant seeks to suppress all statements made and evidence obtained as a result of police questioning on October 18, 2007. The Court declines to do so. Before he was questioned

on October 18, Defendant was presented with the Norfolk Police Department Legal Rights Advice Form, Gov. Ex. A. The form clearly and accurately informed Defendant of his right to remain silent, speak with a lawyer, have a lawyer present during questioning, and have a lawyer appointed. The form further informed Defendant that any statements made may be used as evidence in a court of law. Defendant was able to read question one of the form to Detective Jarvis, and acknowledged with the world "yes" and his initials that he read and understood each of the seven statements therein.

The Norfolk Police Department obtained a valid waiver of Defendant's *Miranda* rights. Defendant initialed next to the statement, "[t]his statement is completely free and voluntary on my part without any threat or promise from anyone." Gov. Ex. A. Defendant then signed and dated the bottom of the form. There is no evidence that Defendant was threatened or coerced into making any statements, and the record reflects that Defendant was asked several times if he needed anything, was provided cigarettes and bottled water at his request, and was permitted to take a nap. Because Defendant was properly informed of his rights under *Miranda*, and because his waiver of those rights was knowing, voluntary, and intelligent, his statements to police on October 18, 2007, will not be suppressed.

## C. Suppression of October 20, 2007 Statements

The Court also declines to suppress statements Defendant made to police on October 20, 2007. Defendant was transported back to the Norfolk Police Department for the purpose of obtaining a buccal swab. Prior to the procedure, Defendant signed a consent form. Detective Hines testified that Defendant seemed to have no problems reading the form and filled it out correctly. While at the station, Defendant made a number of incriminating statements. The parties agree that Defendant was not given any *Miranda* warnings on October 20, 2007.

According to the testimony of Detective Hines, Defendant spontaneously said "they should just give me the chair..." and "can I talk to you?" *See* Hearing Transcript at 35-37. The police then inquired as to what Defendant meant, and Defendant began making incriminating statements. On cross-examination, Defense counsel inquired as to whether Defendant had been given *Miranda* warnings on October 20, 2007. Detective Hines answered that the Norfolk Police had not read Defendant his *Miranda* rights a second time because their meeting with Defendant was only for the purpose of obtaining a buccal swab, not for questioning. Detective Hines further testified that Defendant's incriminating statements were spontaneous and not the result of any police interrogation. Defendant was provided cigarettes and a bottle of Coca-Cola during the ensuing questioning. The Court believes that *Miranda* warnings were unnecessary on October 20, 2007, because the police did not initiate a custodial interrogation. In any event, once the police have obtained a knowing, voluntary, and intelligent waiver of *Miranda* rights, questioning may continue unless and until a suspect clearly invokes his rights. *Davis v. United States*, 512 U.S. 452, 461, 114 S. Ct. 2350, 2356 (1994). The police obtained a voluntary waiver of Defendant's *Miranda* rights two days earlier, on October 18. Further, police are permitted to engage in intermittent questioning over a period of time. Where a defendant makes a spontaneous and un-coerced confession after police have obtained a valid waiver, that confession need not be suppressed. *Boone*, 411 Fed.Appx at 197. The Defense contends that the police policy of physically bringing suspects to the police station for the purposes of a simple buccal swab is somehow tricky, or is designed to elicit confessions. The issue is not whether police action was tricky, but rather whether it violated Defendant's constitutional rights. Because Defendant had previously waived his *Miranda* rights on October 18, and because his statements

on October 20 were spontaneous and un-coerced, the Court denies Defendant's Motion to Suppress the statements and resulting evidence.

## D. Suppression of October 22, 2007 Statements

Finally, Defendant contends that statements made and evidence obtained as a result of questioning on October 22, 2007 must be suppressed. Defendant raises challenges under the Fifth and Sixth Amendments.

The parties dispute whether Defendant invoked his right to counsel. At the start of his interview with Defendant, Detective Thomas asked Defendant if he needed anything, if he wanted a cigarette, and whether he was being treated all right. The detective then identified himself as a member of the Chesapeake Police Department and read Defendant his rights pursuant to the *Miranda* Warning form, Gov. Ex. D. Next, Detective Thomas asked Defendant to sign the form. Importantly, the waiver section of the form was left completely blank, and the transcript does not reflect that Detective Thomas ever specifically asked question two of the waiver form, "[h]aving these rights in mind do you wish to talk with us now?" While the Court finds that Defendant was properly warned of his rights under *Miranda*, any attempted waiver here was defective. The Court finds that Detective Thomas failed to obtain a written waiver from Defendant. Moreover, there was no evidence that Defendant made an oral waiver of his rights.

But even if waiver had been effective, Defendant contends that he invoked his right to counsel shortly thereafter. Defendant claims that once he stated "I got a paper today um, for a lawyer...[t]alk to him about it" toward the beginning of his interview, the detectives should have ceased all conversation with him and provided legal representation. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981) ("[I]t is inconsistent with *Miranda* and its progeny for authorities, at

their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel."). The Government argues that Defendant's statement was not an unequivocal invocation of Defendant's right to counsel.

Having reviewed the interview transcript, the Court finds Defendant's statement about counsel to be less than precise. However, the Court is not prepared to find the statement to be ambiguous within the meaning of this Circuit's cases. Defendant's declaration is much closer to a clear invocation of his right to have counsel present than other cases where the Fourth Circuit has held suspects' statements to be ambiguous. *See, e.g., Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000) ("I think I need a lawyer"); *Mueller v. Angelone*, 181 F.3d 557, 573-74 (4th Cir. 1999) ("Do you think I need an attorney here?"). *See also Davis*, 512 U.S. at 462 ("Maybe I should talk to a lawyer"); *United States v. Zamora*, 222 F.3d 756, 765-66 (10th Cir. 2000) ("I might want to talk to an attorney"); *United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998) (I "might want to get a lawyer then, huh?"); *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996) ("I think I want a lawyer"). The Court believes Defendant's admonition that police talk to his court-appointed lawyer was "clear enough to alert a reasonable police officer that he was requesting an attorney." *Burket*, 208 F.3d at 198. Defendant did not question whether he wanted a lawyer, and he did not ask whether he needed a lawyer. Rather, Defendant informed the police that he had been appointed counsel and directed the police to talk to his lawyer. Further, any *Miranda* waiver obtained prior to October 22 was rendered ineffective when Defendant instructed police to speak with his attorney. His declaration was therefore a constitutionally protected invocation, and the police were required to cease questioning.

Even if Defendant had made an ambiguous request for an attorney, the statements obtained on October 22 were still obtained in violation of the Constitution. By the time

Detective Thomas began his interrogation, Defendant had been appointed counsel on charges pertaining to robberies in Norfolk. Indeed, Defendant told Detectives Thomas and Cole that Defendant had been present in court earlier that very day. Because Norfolk had begun significant judicial proceedings, any questioning regarding robberies in Norfolk was only constitutionally permissible if done in the presence of Defendant's lawyer. Detectives Thomas and Cole could constitutionally question Defendant regarding robberies in Chesapeake and Virginia Beach. On pages one, two, and three of the October 22, 2007, interview transcript, Gov. Ex. E, Detective Thomas specifically notes that he is questioning defendant about Chesapeake and Virginia Beach robberies. However, the following 72 pages of the transcript tell a very different story. In reviewing the transcript in its entirety, the Court finds it nearly impossible to distinguish questions regarding robberies in Chesapeake and Virginia Beach with questions about Norfolk. Several pages refer specifically to the robberies that allegedly took placed in Norfolk, and almost all of the pages are ambiguous with respect to whether the officers are questioning about Chesapeake, Virginia Beach, or Norfolk. This much is certain: as the Government conceded at the motion hearing, any questioning on October 22, 2007, that related to Norfolk robberies violated Defendant's Sixth Amendment right to counsel and "should be suppressed." Tr. at 64. Because questions about Norfolk robberies appear to be inextricably linked with questions regarding Chesapeake and Virginia Beach throughout the entire transcript, the Court finds it appropriate to suppress all statements and evidence relating to questioning on October 22, 2007. To be clear, the Court is granting the Motion to Suppress statements obtained on October 22, 2007 on two separate grounds: (1) the statements were obtained in violation of Defendant's rights under the Fifth Amendment and *Miranda*, and (2) the statements were obtained in violation of Defendant's Sixth Amendment right to counsel.

## IV. CONCLUSION

For the reasons stated above, the Motion to Suppress statements made and evidence obtained is **GRANTED** in part and **DENIED** in part. Specifically, the Motion to Suppress evidence and statements related to police questioning on October 18, 2007, and October 20, 2007 is **DENIED**. Defendant's Motion to Suppress evidence and statements related to police questioning on October 22, 2007, is **GRANTED**.

The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 24, 2014

Raymond A. Jackson
United States District Judge